IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO. 92-202-CIV-5-BR

RUTH O. SHAW, et al.,

    Plaintiffs,

JAMES ARTHUR "ART" POPE, et al.,

    Plaintiff-Intervenors,

v.

GOVERNOR JAMES B. HUNT, in his official capacity as Governor of the State of North Carolina, et al.,

    Defendants,

RALPH GINGLES, et al.,

    Defendant-Intervenors.

## ORDER

For reasons given in the contemporaneously filed Memorandum Opinion, it is ORDERED

1. That the congressional redistricting plan (1997 N.C. Sess. Laws, Ch. 11) submitted by the state defendants to this court for review on April 1, 1997, is hereby APPROVED as having adequately remedied the specific constitutional violation respecting former congressional District 12 that was found by the Supreme Court of the United States in Shaw v. Hunt, 116 S. Ct. 1894 (1996);

2. That this court's injunction entered on July 30, 1996, which inter alia, prohibited the conduct of further

congressional elections pending approval of a remedial redistricting plan is hereby DISSOLVED;

3. That the claim added by amendment to the complaint in this action on July 12, 1996, which challenged on "racial gerrymandering" grounds the creation of former congressional District 1, is hereby DISMISSED, without prejudice, as moot; and

4. Defendants' motion suggesting a schedule and process for approving the state's new congressional redistricting plan is DENIED as moot.

This 17 day of September, 1997.

For the Court:

W. Earl Britt, United States
District Judge

RUTH O. SHAW, et al.,

    Plaintiffs,

JAMES ARTHUR "ART" POPE, et al.,

    Plaintiff-Intervenors,

v.

GOVERNOR JAMES B. HUNT, in his official capacity as Governor of the State of North Carolina, et al.,

    Defendants,

RALPH GINGLES, et al.,

    Defendant-Intervenors.

FILED
SEP 12 1997
DAVID W. DANIEL, CLERK
U.S. DISTRICT COURT
E. DIST. NO. CAR.

## MEMORANDUM OPINION

PER CURIAM:

    This matter is before the court upon submission by the state-defendants of a congressional redistricting plan enacted by the General Assembly of North Carolina in compliance with this court's injunctive decree of July 30, 1996. The submission seeks approval of the plan as having adequately remedied the constitutional violation found by the Supreme Court of the United States in <u>Shaw v. Hunt</u>, 116 S. Ct. 1894 (1996), and, in consequence, a dissolution of this court's injunction against the conduct of further congressional elections pending that approval.

For reasons that follow, we conclude that the plan does adequately remedy the specific constitutional violation found as to the plaintiffs and plaintiff-intervenors in this case, and on that basis we will enter an order approving the plan to that extent and dissolving the extant injunction.

I

On June 13, 1996, the Supreme Court of the United States entered its judgment remanding this action for further proceedings by this court in conformity with the Supreme Court's decision that North Carolina's then-extant congressional redistricting plan was unconstitutional because unjustified "racial gerrymandering" in the location and configuration of District 12 violated equal protection rights of some of the named plaintiffs in the action. Shaw, 116 S. Ct. at 1899.

Pending receipt of the Supreme Court's mandate, which did not issue immediately, this court, on July 12, 1996, granted an unopposed motion by plaintiffs and plaintiff-intervenors to amend the complaint in the action to add new parties and to raise a Shaw-claim challenge to District 1.

Following receipt of the Supreme Court's mandate and after holding a hearing on the implementation of the required remedy for the constitutional violation, we entered an order on July 30, 1996, that enjoined the state-defendants from conducting any congressional elections under the then existing redistricting plan after the 1996 elections, but allowed the then ongoing

2

electoral process for those elections to proceed to completion. The order referred the development of a proposed remedial plan to the General Assembly of North Carolina for exercise of its primary jurisdiction in the matter, with instructions to enact and submit to this court a proposed remedial plan by April 1, 1997. The order retained jurisdiction in this court to act in default of timely action by the General Assembly, for approval of any plan submitted, and for such further proceedings as might be required.

The General Assembly enacted a proposed remedial plan on March 31, 1997 (1997 N.C. Sess. Laws, Ch. 11) and timely submitted it to this court for approval on April 1, 1997. Contemporaneously, the State submitted the plan for preclearance by the United States Department of Justice pursuant to § 5 of the Voting Rights Act and we deferred action on the plan pending action by the Justice Department. See McDaniel v. Sanchez, 452 U.S. 130 (1981).

While preclearance action was pending, we entered an order on May 28, 1997, denying intervention either of right or permissively to a number of African-American voters and associations who sought intervention both to suggest alternative remedial plans and to raise specific vote-dilution challenges under § 2 of the Voting Rights Act to certain districts in the proposed plan. We found no right to intervene under the provisions of Fed. R. Civ. P. 24(a), and declined to exercise our discretion to permit expansion of this action to include new § 2 dilution claims under Fed. R. Civ. P. 24(b).

3

On June 9, 1997, the Department of Justice precleared the plan pursuant to § 5 of the Voting Rights Act. On that same day, we entered an order directing plaintiffs and plaintiff-intervenors to advise the court by June 19, 1997, whether they intended to object to approval of the plan by this court and, if so, to identify the basis of their objections.

In response, the plaintiffs (both original and added), while asserting protectively the plan's inadequacy, disclaimed standing under the principles of United States v. Hays, 515 U.S. 737 (1995), to make any challenge to the plan because, they asserted, none of the original plaintiffs resided in the "new" Twelfth District, nor did any of the added plaintiffs reside in either the original or "new" Twelfth.

Separately responding, the plaintiff-intervenors, reasserting a position previously urged by motion, also declined to make substantive objection to the plan. They contended instead that the action, having been mooted by the legislative action, could only be dismissed without prejudice on that basis.

The state defendants, replying to these separate disclaimers of standing and assertions that the entire action was moot contended (1) that there were both plaintiffs and plaintiff-intervenors with the requisite standing to make substantive challenges to the submitted plan as to both Districts 1 and 12, and (2) that the action was not mooted by virtue of the legislative action. On this basis, they contended that the parties with standing should be required to make such challenges as they could,

4

and that this court was empowered and obligated to exercise its continuing jurisdiction to review the submitted plan to determine whether it remedies the constitutional violation found by the Supreme Court.

II

We first address the issues presented by the lack-of-standing and mootness positions taken by the plaintiffs and plaintiff-intervenors and disputed by the state defendants, and the consequent declination by the plaintiffs and plaintiff-intervenors to take any substantive position on the adequacy of the proposed remedial plan, then turn to the merits.

1. To the extent the plaintiff-intervenors' contention is that the entire action has been mooted by the legislature's enactment of a remedial plan, thereby depriving this court of jurisdiction even to approve or disapprove the plan and requiring a simple dismissal without prejudice, we reject the contention. Neither of the Supreme Court decisions relied upon for the proposition supports it; each is inapposite.

In Louisiana v. Hays, 116 S. Ct. 2542 (1996), a pending appeal from a three-judge court-ordered redistricting plan was dismissed as moot. In that case, the state legislature had in the interval independently adopted and enacted the plan. This obviously mooted any basis for Supreme Court review of the district court order, whereas here the very matter pending judicial review is the legislative enactment.

5

In Johnson v. Northam, No. TCA 94-40025-MMP, 1996 WL 297280 (N.D. Fla. May 31, 1996), a three-judge court, after hearing the parties on the adequacies of a legislative remedial plan and approving it, then ordered the case "closed with respect to the remedies that have been rendered to correct any constitutional infirmity found" in the challenged plan. Id. at *1. Rather than demonstrating that a legislature's enactment and submission of a proposed remedial plan moots the action, the case demonstrates to the contrary the continuing jurisdiction of the court to act in judicial review of the enacted plan before "closing" the case.

We therefore conclude that legislative enactment of the submitted plan did not, by mooting the entire action, deprive this court of its expressly retained jurisdiction to review the plan for approval.

2. Though enactment of the plan submitted has not mooted the entire action, it has effectively mooted the Shaw-claim added by amendment to challenge District 1. As we expressly anticipated in deferring consideration of that added claim pending legislative action, the remedial plan significantly reconfigures the area formerly comprising that district, making the claim challenging its former configuration, location, and racial composition moot. Because as to that claim we therefore have no retained approval jurisdiction, it may be dismissed for mootness if the plan is approved as having adequately remedied the specific violation that has been determined as to District 12.

6

3. Assuming without deciding (the fact being disputed) that--as they assert--none of the plaintiffs resides in "new District 12," any resulting lack of standing on their part to challenge the constitutionality of that particular reconfiguration of districts cannot affect our retained jurisdiction to review the plan for its adequacy to remedy the violation found as to former District 12. We are doubtful that the non-inclusion of successful plaintiffs in any particular reconfigured district that is assumed to be <u>the</u> specific remedial district could be thought, because of the <u>Hays</u> residence requirement, to deprive them of standing to challenge the remedial plan as inadequate for the purpose at issue. But we need not attempt to decide that quirky problem growing out of the <u>Hays</u> standing rule. It suffices for our purposes that, for reasons satisfactory to themselves, the plaintiffs have formally chosen not to raise any substantive challenge to the adequacy of the plan to remedy the specific violation found as to former District 12.

In that circumstance, we may properly approve the plan as having remedied the specific violation found on the simple basis that its adequacy for that purpose has not been challenged by any party to the litigation. Under long-settled judicial redistricting principles, once a state legislature enacts a remedial plan that is then precleared under § 5 of the Voting Rights Act, that plan "will then be the governing law unless it, too, is challenged and found to violate the Constitution." <u>Wise v. Lipscomb</u>, 437 U.S. 535, 540 (1978). That principle simply applies in this particular context

7

the general presumption that, until successfully challenged, state legislative enactments are in conformity with constitutional requirements.

There having been no substantive challenge to the plan by any party to this action, we will therefore approve it as a constitutionally adequate remedy for the specific violation found by the Supreme Court in this case.

4. We close by noting the limited basis of the approval of the plan that we are empowered to give in the context of this litigation. It is limited by the dimensions of this civil action as that is defined by the parties and the claims properly before us. Here, that means that we only approve the plan as an adequate remedy for the specific violation of the individual equal protection rights of those plaintiffs who successfully challenged the legislature's creation of former District 12. Our approval thus does not--cannot--run beyond the plan's remedial adequacy with respect to those parties and the equal protection violation found as to former District 12.

## III

For the foregoing reasons, an order will be entered which approves the submitted plan to the extent noted, dissolves the injunction of July 30, 1996 against the conduct of further congressional elections, and dismisses without prejudice, as moot, the claim added by amendment to challenge former congressional District 1.

8